```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF NEW JERSEY
```

|  |  |
|---|---|
| SALAHUDDIN F. SMART, : | |
| : | Civil Action No. |
| Plaintiff, : | 05-1777 (NLH) |
| : | |
| v. : | |
| : | |
| ERIC TAYLOR, et al., : | **OPINION** |
| : | |
| Defendants. : | |

**APPEARANCES:**
SALAHUDDIN F. SMART
LYNNE BROOK GARDENS
125 SOUTH WHITE HORSE PIKE
APT. NO. 52
LINDENWOLD, NJ 08021
*Pro Se Plaintiff*

HOWARD LANE GOLDBERG
OFFICE OF CAMDEN COUNTY COUNSEL
520 MARKET STREET
COURTHOUSE - 14TH FLOOR
CAMDEN, NJ 08102-1375
*Attorney for Defendants Eric M. Taylor, Warden, John Doe, CCCF Officer, and Camden County Sheriff's Department*

**HILLMAN, District Judge**

### I. BACKGROUND

Pro se plaintiff, Salahuddin F. Smart, brought claims pursuant to 42 U.S.C. § 1983 alleging that defendants violated his Fourth Amendment rights when they performed a body cavity search on his person when he reentered the Camden County Correctional Facility ("CCCF"). Subsequent to filing his amended complaint on June 8, 2006, plaintiff filed approximately nine documents entitled "ajudicative facts," two "affidavits," a

"supplemental brief" and a post card (collectively "plaintiff's supplemental filings").[1] Based on plaintiff's amended complaint and supplemental filings, it appears that on March 17, 2005,[2] plaintiff was a pretrial detainee and attended a bail hearing before the New Jersey Superior Court in the Camden County Hall of Justice (hereinafter "courthouse"). Although the facts are not entirely clear, it appears that plaintiff was stripped searched before the hearing on March 17, 2005, and again upon reentering the CCCF after the hearing concluded.[3] Plaintiff does not

---

[1] Although almost all of plaintiff's supplemental filings were not properly filed since they were filed as "adjucative facts" and seek to impermissibly supplement earlier filings, plaintiff is proceeding pro se and, therefore, we take a liberal view of plaintiff's filings and consider them where appropriate. See Estelle v. Gamble, 429 U.S. 97, 107 (1976) (stating "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers"). Generally, the supplemental filings repeat what plaintiff stated in earlier filings. Moreover, defendants have not moved to strike any of the supplemental filings.

[2] Plaintiff states in some of his filings that the search occurred on March 17, 2005, and in others that it occurred on March 17, 2006. Defendants state that "[d]ocuments maintained by the Defendant Camden County Correctional Facility indicate that the plaintiff was, indeed, incarcerated in the CCCF on March 17, 2005." Attached as Exhibit D to defendants' motion is a copy of a bail order signed by the Honorable John T. McNeil, Judge, Superior Court of New Jersey, on March 17, 2005. The order indicates that plaintiff was charged with endangering the welfare of a child and assault, with bail set at $20,000. Instructions on the order state "return Defendant to CCCF."

[3] Plaintiff's "adjudicative facts" filed on May 25, 2007, state "The strip search going to bail hearing before Hon. John T. McNeil, J.S.C. is not in question even though that particular body cavity search may even as well be illegal, both searches on 3-17-06 (sic) are separate individual searches."

contest the first strip search, but does allege that the second search was a violation of his Fourth Amendment rights. Plaintiff alleges that during the second strip search he was stripped naked and a "body cavity" search was performed on his person. Plaintiff alleges that no reasonable suspicion existed to search him because he was "shackled" and in the custody of the Sheriff's Department while attending the hearing at the courthouse which is connected by a tunnel to the CCCF and, therefore, he was never "outside" of the building to warrant a search upon reentry to the CCCF. In addition to his § 1983 action, plaintiff alleges that he has suffered from "intentional emotional pain" by defendants in violation of state law.[4]

Before the Court is defendant's motion for summary judgment, plaintiff's cross motion for partial summary judgment, and plaintiff's emergency motion. We address each in turn.

## II.  **JURISDICTION**

This Court exercises jurisdiction pursuant to 28 U.S.C. § 1331 over plaintiff's 42 U.S.C. § 1983 action for violation of

---

[4] It appears that Mr. Smart was also a plaintiff in class action litigation in this district, Hicks v. County of Camden, No. 05-1857 (JHR), regarding strip searches at the CCCF. An Order preliminarily approving settlement was filed in the Hicks case on December 1, 2007, and the case has been closed. Since defendants have not filed a motion to dismiss this case based on principals of issue or claim preclusion, we assume that neither plaintiff's status in that case or the issues decided there bar his prosecution of this case.

his federal constitutional rights.  We exercise supplemental jurisdiction over plaintiff's state law claim of "intentional emotional pain"  pursuant to  28 U.S.C. § 1367.

### III.  DISCUSSION

**A.   Summary Judgment Standard**

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56.

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id.  In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor."  Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id. Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57. A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements. Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). If review of cross-motions for summary judgment reveals no genuine issue of material fact, then judgment may be entered in favor of the party deserving of judgment in light of the law and undisputed facts. See Iberia Foods Corp. v. Romeo Jr., 150 F.3d 298, 302 (3d Cir. 1998) (citation omitted).

**B.  Qualified Immunity**

Since the correctional facility and the sheriff's department were dismissed,[5] the two remaining defendants are the Warden,

---

[5] The CCCF was dismissed by Order entered on June 9, 2006. Plaintiff filed a stipulation of dismissal of defendant Camden County Sheriff's Office which was entered on March 5, 2008.

Eric M. Taylor, and John Doe, a CCCF Officer.[6] Following the liberal pleading rules applicable to pro se plaintiffs, see Estelle, 429 U.S. at 107, it appears that plaintiff has sued the two individual defendants in their official and individual capacity.

These individual defendants argue that they are entitled to qualified immunity. Deciding whether local officials are entitled to qualified immunity is a two-step process. First, it must be determined whether a constitutional right would have been violated on the facts alleged. Doe v. Groody, 361 F.3d 232, 238 (3d Cir. 2004)(citations omitted). Second, if a constitutional violation did occur, it must be determined whether the right was "clearly established" at the time so that the official would have had fair notice that his conduct was unlawful. Id. The test is whether the official's conduct was reasonable at the time. Brosseau v. Haugen, 543 U.S. 194, 198 (2004)(stating that "... whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct). The inquiry is objective and is taken "in light of the specific context of the case, not as a

---

[6] An Order granting plaintiff's motion to amend his complaint to add Camden County as a defendant was entered on March 19, 2008. This Opinion only pertains to the defendants currently named. We assume for purposes of this Opinion that John Doe is the CCCF Officer that performed the strip search on plaintiff.

broad general proposition." Id. (citing Saucier v. Katz, 533 U.S. 194 201 (2001).

### 1. Constitutional Violation

Plaintiff alleges that defendants violated his Fourth Amendment right to be free from unreasonable searches when he was subject to a body cavity search upon his reentry to the CCCF. Defendants state that no violation occurred because such searches are reasonable and also in compliance with New Jersey regulations permitting searches upon entry to the correctional facility after leaving for any reason.

The Supreme Court in Bell v. Wolfish 441 U.S. 520 (1979) examined whether strip searches of pretrial detainees were constitutional. The Supreme Court recognized that the government has a legitimate interest in maintaining security at its facilities and making sure that no drugs or weapons come inside the facility. Id. at 540. In determining whether a search of a pretrial detainee rises to the level of a constitutional violation, the Supreme Court explained that the inquiry "... requires a balancing of the need for the particular search against the invasion of personal rights that the search entails." Id. at 559. "Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." Id. (citations omitted). The Supreme Court held that a visual cavity

inspection could be conducted upon less than probable cause. Id. at 560. The Supreme Court, however, also recognized that even if a search is warranted, not all searches are conducted in a reasonable manner. Id. at 560 (recognizing that a security guard on occasion may conduct a search in an abusive manner and stating that abusiveness will not be condoned (citation omitted)).

In this case, plaintiff argues that he was subject to a "body cavity" search and that no reasonable suspicion existed to search him because he did not exit the building when he left the CCCF to attend the hearing in the courtroom and because he was "shackled" and under the supervision of the sheriff's department at all times. Defendants argue that the New Jersey Code permitting strip searches of an inmate entering or reentering a facility is constitutional. Since plaintiff alleges he was subject to a body cavity search and defendants rely on New Jersey policy regarding strip searches, we first address whether plaintiff was subjected to a body cavity search or a strip search.

N.J.S.A. 02A:161A-3 defines a "strip search" as "the removal or rearrangement of clothing for the purpose of visual inspection of the person's undergarments, buttocks, anus, genitals or breasts." A "body cavity search" is defined as "the visual inspection or manual search of a person's anal or vaginal cavity." Id. In State v. Anderson, No. 03-03-0221-I, 2007 WL

8

2752365, at * 4 (N.J.Super. App.Div. Sept. 24, 2007), the court found that an officer who "merely spread defendant's buttock with one hand after defendant refused to do so himself" but did not search the defendant's anus did not perform a body cavity search. In <u>Hodges v. Klein</u>, 412 F.Supp. 896, 897-98 (D.N.J. 1976), the court described a strip search as when the inmate takes off all his clothes, raises his arms and opens his mouth for inspection; spreads his legs apart and lifts his penis and scrotum; bares the soles of his feet and then bends over and spreads his buttocks to reveal his anus.

Here, plaintiff alleges that he was stripped naked and told to bend over. He does not allege that defendants touched him in any way or searched his anus. Based on the language of the statute and description of a strip search in <u>Anderson</u> and <u>Hodges</u>, defendants performed a "strip search" and not a "body cavity search" on plaintiff.

The section of the New Jersey Code that deals with strip searches is N.J.A.C. 10A:31-8.5 which states in relevant part:

> (b) Strip searches may be conducted in any of the following circumstances:
> 1. Prior to admitting a person lawfully confined to an adult county correctional facility, prison or jail by court order or pursuant to an arrest authorized by law;
> 2. Before an inmate enters the facility after being permitted to leave for any reason;

9

>    3.  Whenever there is reasonable suspicion that an inmate is carrying contraband;
>    4.  Before placement of an inmate into:
>        i. Prehearing Detention;
>        ii. Disciplinary Detention; or
>        iii. Protective Custody.
>    5.  Before placement of an inmate under a psychological observation or suicide watch;
>    6.  Whenever the person admitted for a minor offense(s) is known to have a history of violent or assaultive conduct or a previous conviction(s) for a crime(s); and
>    7.  After a contact visit.
>        * * *
>   (d) A strip search shall be conducted:
>    1.  At a location where the search cannot be observed by unauthorized persons;
>    2.  By custody staff of the same sex as the inmate except as set forth in (e) below; and
>    3.  By the number of custody staff deemed reasonably necessary to provide security.

Defendants rely on N.J.A.C. 10A:31-8.5 (b)(2) which provides that an inmate can be strip searched when entering the facility after being permitted to leave for any reason. Defendants argue that this provision was followed because plaintiff was permitted to leave the confines of the CCCF to attend a hearing in Superior Court and was searched upon reentry to the CCCF.

The defendants also rely upon the decision in <u>Hodges</u> which

held that a policy requiring strip searches when an inmate enters a detention facility to be constitutional.  412 F.Supp. at 900.  The court in that case stated "[t]he prison policy of requiring anal inspections when an inmate is entering or leaving the institution is clearly constitutional...[w]hile submitting to such a visual inspection by prison guards is degrading and intrudes upon a prisoner's right of privacy, the state's interest under the above circumstances is so strong that it outweighs the individual interest."  Id.  The court also found strip searches to be constitutional after the inmate engaged in personal contact visits between inmates and friends or relatives.  Id. at 900-01 (finding the inmate had complete privacy during visits with friends or relatives and an anal examination is not unreasonable under the circumstances).

The court, however, did not find all instances when anal examinations were part of the strip search to be constitutional.  In Hodges, some of the inmates were segregated from the general population, in a "management control unit."  Id. at 897.  While the court found the state had an interest in requiring anal examinations before the inmate enters segregation, or has unescorted contact with general population inmates, it concluded that the state had "... no interest in requiring anal examinations before or after a segregated inmate is moved within the segregation area or anywhere in the prison while under escort

11

or observation." Id. at 902.

The analysis of the court in Hodges in determining whether an anal inspection was reasonable centered on whether it was possible that contraband could be transferred to the inmate. If the court found that such a risk existed, then they concluded that an anal inspection was reasonable given the state's interest in prohibiting drugs and weapons in the facility. Id. at 900-02.

In this case, defendants, relying on Hodges, argue in essence that it is per se reasonable to conduct a strip search whenever a prisoner leaves the facility because of the state's overriding interest in not permitting contraband in the CCCF. While we recognize the substantial legitimate interest of the defendants in precluding contraband in the county facility and the power to take necessary and reasonable steps to prevent it, defendants overstate the holding in Hodges.

Here, as in Hodges, the issue turns on whether some risk exists under the facts of this case that an inmate will have access to contraband. If such a risk exists, then it may very well be that a second visual anal search is reasonable under the circumstances. See Bell, 441 U.S. at 559. The problem here, however, is that defendants simply ask the court, without any factual support for their motion, to adopt a per se legal rule that each and every time a defendant leaves the CCCF facility, no

matter what the circumstances of the prisoner's removal and custody, that the county may engage in an anal examination upon their reentry into the facility.  We decline to adopt such a per se rule.[7]

While we can conjure up the notion that such a rule would be reasonable in the overwhelming majority of circumstances and speculate that the instances in which a reentry search would be deemed unreasonable, and therefore unconstitutional, extremely rare, it is not the burden of the court to engage in such speculation.  Rather, it is the burden of the defendants, as the moving party, to demonstrate that no material issue of fact exists.  In support of their motion, defendants merely cite the Hodges case and the relevant state regulations.  There is no affidavit explaining the circumstances and facts surrounding plaintiff's movements and custody from the CCCF to the courthouse

---

[7] Even if Hodges could be construed to adopt such a per se rule, such a holding would not seem to survive the Supreme Court's decision in Bell.  Bell clearly holds that lower courts must assess "the scope of the particular intrusion, the manner in which it is conducted, [and] *the justification for initiating it*...."  Id., 441 U.S. at 559.  Subsequent appellate decisions are consistent with the notion that the district courts must assess the risk-based rationale behind in-custody searches. See infra Hodges v. Stanley, 712 F.2d 34 (2d. Cir. 1983) (allowing constitutional claim where plaintiff was under continuous escort and, therefore, no possibility of obtaining and concealing contraband); Bono v. Saxbe, 620 F.2d 609, 617 (strip search constitutional after non-contact, supervised visit only if some risk of smuggling contraband).

and back; no similar affidavit explaining how the jail and courthouse buildings relate to one another; no statement from a person with personal knowledge of when and how, if ever, plaintiff was exposed to third parties who are not law enforcement personnel.

Plaintiff, on the other hand, contends that he was strip-searched leaving the facility, "shackled" the entire time he was outside the facility, and escorted via a secure tunnel from the CCCF to the courthouse and back by the sheriff's department. Absent an affidavit from the defendants disputing these facts, the court is left to speculate how, on plaintiff's uncontested facts, contraband could be transferred to a shackled plaintiff and hidden in his anus while attending a hearing at the courthouse.

In addition, plaintiff alleges that two other inmates were present when his strip search was conducted. While several courts have held that the presence of other inmates during a strip search is not constitutionally defective, see DiFilippo v. Vaughan, No. 95-909, 1996 WL 355336, at *2 (E.D.Pa. June 24, 1996)(citing Elliot v. Lynn, 38 F.3d 188 (5th Cir.1994), cert. denied, 115 S.Ct. 176 (1995); Franklin v. Lockhart, 883 F.2d 654 (8th Cir. 1989); Michenfelder v. Sumner, 860 F.2d 328 (9th Cir. 1988)), the presence of the other inmates is a factor to consider

14


in the overall reasonableness of the search.  See Bell 441 U.S. at 559 (requiring an inquiry into the manner and the place in which the search is conducted).

In sum, defendants have not shown as a matter of law, as they must, that no reasonable fact finder could conclude under these circumstances that the defendants violated the Fourth Amendment by conducting the second visual inspection of plaintiff's anus.  See Hodges v. Stanley, 712 F.2d 34 (2d. Cir. 1983) (finding possible constitutional claim where second search took place shortly after first search and occurring after plaintiff had been under continuous escort and, therefore, no possibility of obtaining and concealing contraband existed); Bono v. Saxbe, 620 F.2d 609, 617 (strip search constitutional after non-contact, supervised visit only if some risk of smuggling contraband).[8]  Thus, we conclude that defendants have not shown as a matter of law that they are entitled to qualified immunity based on the first inquiry – that no constitutional violation occurred.

---

[8] Plaintiff also argues that no reasonable suspicion existed to strip search him upon reentry to the CCCF.  We construe this argument as a restatement or reformulation of his essential claim that the second reentry search violated the Fourth Amendment because he was not at risk of smuggling contraband.  We know of no legal authority that would restrict the county to anal searches based on a reasonable suspicion if their search criteria otherwise met the standard set forth in Bell.


### 2. "Clearly Established"

Although defendants are not immune under the first inquiry of the qualified immunity analysis, under the second step, the right to be free from strip searches under these particularized facts was not so "clearly established" that the defendants would have had fair notice that their conduct was unlawful.  See Brosseau, 543 U.S. at 198.

In conducting strip searches upon reentry to the CCCF, defendants were following N.J.A.C. 10A:31-8.5(b)(2) which clearly provides that a search may be conducted when an inmate enters the facility after being permitted to leave for any reason.  This regulation on its face does not appear to violate the Fourth Amendment.  See Hodges 412 F.Supp. at 900.  A warden or guard following this regulation would be under the reasonable assumption that his or her actions were compliant with the law. See Bell 441 U.S. at 559.  Therefore, even if a jury finds that the search of plaintiff upon reentry to the CCCF from the courthouse did violate the Fourth Amendment, such a right was not so "clearly established" that the guards would have had fair notice that their conduct was unlawful.  See Brosseau, 543 U.S. at 198.  Thus, we find that defendants are entitled to the defense of qualified immunity in their individual capacity because they were following regulations that appear on their face

16

to permit such a search.  See id. (stating that "[i]f the law at that time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation."). Since genuine issues of material fact remain over whether plaintiff's constitutional rights were violated, however, defendants remain in the case in their official capacity.

    **D.  New Jersey Tort Claims Act**

Defendants argue that plaintiff's state law claim of "intentional emotional pain" should be dismissed because he failed to comply with the notice requirements of the New Jersey Tort Claims Act.  "To bring an action in tort against a 'public entity or public employee' in New Jersey, the claimant must file a notice of claim with the entity within ninety days of the accrual of the claim or else be 'forever barred' from asserting that cause of action."  County Concrete Corp. v. Town of Roxbury, 442 F.3d 159, 174 (3d Cir. 2006) (citing N.J. Stat. Ann. § 59:8(3) and (8); Moon v. Warren Haven Nursing Home, 867 A.2d 1174, 1176 (N.J. 2005)).  Plaintiff has not complied with the notice requirements of the New Jersey Tort Claims Act and, therefore, his state law claims against defendants are dismissed. See Jacobs v. City of Bridgeton, No. 05-0428, 2006 WL 3496852, at * 4 (D.N.J. Dec. 4, 2006) (granting summary judgment in favor of

defendants where plaintiff failed to comply with the notice requirements under the New Jersey Tort Claims Act).

### E. Cross Motion for Partial Summary Judgment

Plaintiff filed a cross motion for partial summary judgment. It appears that plaintiff is arguing for summary judgment in his favor regarding his 42 U.S.C. § 1983 claim. For the reasons expressed above, summary judgment is not appropriate at this time because genuine issues of material fact remain over whether the state's legitimate interest in prohibiting contraband from entering the CCCF justified a second strip search of plaintiff. The courthouse, although attached via tunnel to the CCCF, is a public space. Witnesses, family members, press, interested observers and the like, are usually permitted to attend hearings inside the courthouse. Plaintiff has not shown as a matter of law that the courthouse was so secure as to prevent the likelihood that contraband could be transferred to a person while in the custody of the sheriff's department.

Therefore, plaintiff's motion for partial summary judgment is denied.

### F. Motion for Emergency Relief

Plaintiff also filed an "emergency federal injunction motion." In the motion, plaintiff expressed his concern that a future bail hearing would be scheduled and he would be subject to

the same strip search procedure.  Plaintiff, however, stated in another filing that defendants are no longer following the search procedure he described in his complaint and motion.[9]  Since plaintiff stated that the strip search procedure he described is no longer practiced, it appears that plaintiff's motion is moot.  Therefore, plaintiff's motion is denied without prejudice.

## IV.  CONCLUSION

For the reasons expressed above, defendants' motion for summary judgment is denied in part and granted in part.  Plaintiff's cross motion for partial summary judgment is denied and "emergency federal injunction motion" are denied.  An Order consistent with this Opinion will be entered.

                                              s/Noel L. Hillman  
                                              NOEL L. HILLMAN, U.S.D.J.

At Camden, New Jersey

Dated: March 19, 2008

---

[9] See plaintiff's cross motion for partial summary judgment.